AO 91 (Rev. 08/09)  Criminal Complaint

# UNITED STATES DISTRICT COURT
for the

Western District of Texas

FILED
DEC 09 2024
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
DEPUTY CLERK

| | |
|---|---|
| United States of America<br>v.<br>VEGA, Yobany<br><br>*Defendant(s)* | )<br>)<br>)   Case No. DR-24-M-03649<br>)<br>)<br>) |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __December 06, 2024__ in the county of __Maverick__ in the __Western__ District of __Texas__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| Title 21 U.S.C. 952 | Unlawfully, knowingly, and intentionally import or cause to be imported a quantity of methamphetamine a Schedule II Controlled Substance, into the United States. |

This criminal complaint is based on these facts:

See Attachment A

☒ Continued on the attached sheet.

*Complainant's signature*

Anna Ebersole, HSI Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 12/9/2024

*Judge's signature*

Joseph A. Cordova, U.S. Magistrate Judge
*Printed name and title*

City and state: Del Rio, Texas

Attachment A

On December 06, 2024, at approximately 04:00 hours, Yobany VEGA, a United States Citizen, attempted to make entry into the United States via the Eagle Pass, Texas Port of Entry (POE) Bridge 2. VEGA was the driver and sole occupant of a grey 2017 Nissan Murano bearing Texas license VVB0814. During primary inspection, an NCIC system alert, due to VEGA's criminal history of assault on a peace office, was displayed to the Customs and Border Protection Officer (CBPO). In addition, the name on the registration did not match VEGA's. When asked by the CBPO, VEGA stated that it belonged to his friend "Jose" and Jose just handed over the vehicle to him in Piedras Negras, Mexico today. VEGA told the CBPO that he was in Mexico for the past four days. These facts along with VEGA's behavior led the CBPO to refer the vehicle to secondary inspection.

In secondary, VEGA told the CBPOs that the vehicle was actually his and he was still making payments on it. After VEGA parked the vehicle in secondary, he was directed by CBPOs to sit in the waiting area directly across from the parked vehicle. As VEGA was seated in the waiting area, he was actively observing the CBPOs' inspection of the vehicle. Inside the vehicle, a receipt for an insurance policy purchased on December 5, 2024, by VEGA was discovered. There was no property inside the vehicle besides a charging cable. VEGA did not have any bags, clothing, or personal items with him. The Record checks did not reveal any sale of the vehicle.

CBPOs began a manual inspection of the vehicle, including utilizing a mirror to look at the undercarriage of the vehicle. CBPOs noticed a non-factory compartment box visible with Bondo and black tar over spray. The muffler had been cut and rerouted towards the passenger side leaving the factory space to be modified into a box. The CBPOs proceeded to inspect the front passenger side and began tapping on the roof. While tapping on the roof, the CBPO noticed an anomaly within the roof compartment. During the tapping on the roof, VEGA, who was actively watching the inspection, looked away and lowered his head. VEGA began scratching his head and then looked up at the CBPOs again. VEGA then observed the CBP K-9 inspect and positively alert for the presence of narcotics in the vehicle. Once again VEGA looked away from the CBPOs. After the positive alert VEGA was taken to the holding cell and the vehicle was driven through a non-intrusive Z-Portal X-ray.

In the X-ray images, CBPOs noticed anomalies in the vehicle's roof and vehicle floor. The CBPOs used a pry tool to access the roof's non-factory compartment. Inside this non-factory compartment, was seven (7) duct taped wrapped packages. By removing the center console in the vehicle, CBPOs were able to access the floor compartment. CBPOs extracted thirty-four (34) packages from the floor compartment, for a total of forty-one (41) packages. All forty-one (41) packages were tested by CBPOs using the GEMINI system and tested positive for properties of Methamphetamine, a Schedule II Controlled Substance. The total (gross) weight of the packages was approximately 133.63 kilograms.

Homeland Security Investigations Special Agents responded and advised VEGA of his Miranda Rights. VEGA invoked his right to a lawyer and the interview was terminated. VEGA was returned to the holding cell.